FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS** 2019 APR 17  AM 10: 01
**AUSTIN DIVISION**

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

**J&J SPORTS PRODUCTIONS, INC., as**
**Broadcast Licensee of the September 13,**
**2014 "Mayhem" Floyd Mayweather, Jr. v.**
**Marcos Rene Maidana Fight Program,**
**Plaintiff,**

**-vs-**

**FIFTH CLUB, INC., individually and d/b/a**
**Tejano Ranch; SALIM SALEM, a/k/a**
**SALIM G. SALEM, individually and d/b/a**
**Tejano Ranch; and GHASSAN NAJJAR,**
**individually and d/b/a Tejano Ranch,**
**Defendants.**

**CAUSE NO.:**
**AU-17-CV-00891-SS**

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause,

and specifically Plaintiff J&J Sports Productions, Inc.'s Motion for Summary Judgment [#16] and

the Responses of Defendants Fifth Club, Inc. ("Fifth Club") [#18], Salim Salem [#20], and

Ghassan Najjar [#21] thereto. Having reviewed the documents, the relevant law, and the file as a

whole, the Court now enters the following opinion and orders.

**Background**

Plaintiff markets and licenses commercial exhibitions of pay-per-view prize fighting

events. Mot. Summ. J. [#16] at 6. Defendant Fifth Club is a Texas corporation that formerly owned

Tejano Ranch, a dance and night club in Austin, Texas. Fifth Club's Resp. [#18] at 2. Defendants

Salem and Najjar are shareholders and officers of Fifth Club. *Id.*

The dispute in this case centers around the commercial exhibition of a fight between Floyd

Mayweather, Jr. and Marcos Rene Maidana and related undercard bouts on September 13, 2014

(the "Event"). Under an agreement with the Event's promoters, Plaintiff held exclusive rights to

1

exhibit the Event in Texas and to sublicense its exhibition rights to commercial establishments throughout Texas. Mot. Summ. J. [#16] at 6. Thus, a commercial establishment in Texas could legally exhibit the Event only if it had obtained Plaintiff's authorization. *Id.* at 7; *see also id.* [#16-1] Ex. A-1 at 1.

The transmission of the Event originated via a satellite feed. *Id.* [#16] at 7. To ensure the Event could only be shown by commercial establishments that had received authorization from Plaintiff, the feed was electronically coded, or "scrambled." *Id.* Commercial establishments wanting to exhibit the Event were required to pay Plaintiff a sublicensing fee for the Event based on the establishment's capacity. *Id.* In return, Plaintiff either notified the establishments' cable or satellite providers to descramble the feed or provided the establishments with equipment that could descramble the feed. *Id.*

On the night of the Event, an auditor entered Tejano Ranch at approximately 10:45 p.m. after paying a $5 cover charge. *Id.* [#16-1] Ex. A-2. Upon entering Tejano Ranch, the auditor observed the Event being broadcast on eight television screens to approximately 180 patrons. *Id.* An investigator hired by Plaintiff also visited Tejano Ranch and recorded a minute-long video showing the Event being broadcast on at least one screen. *Id.* Ex. F.[1] There is no evidence of an agreement between Plaintiff and Defendants to exhibit the Event at Tejano Ranch, and there is no evidence any Defendant paid a licensing fee to Plaintiff to exhibit the Event.

On September 12, 2017, Plaintiff filed this suit alleging Defendants violated the Communications Act of 1934 by intercepting and exhibiting the Event at Tejano Ranch without authorization. Compl. [#1]; *see also* 47 U.S.C. §§ 553, 605. Plaintiff now moves for summary

---

[1] The video may also be viewed at https://youtu.be/GKrLhgtWqXY.

judgment on its § 605 claim.[2] Mot. Summ. J. [#16] at 10. This pending motion has been briefed and is ripe for review.

Analysis

**I.      Legal Standard**

      **A. Summary Judgment**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are

---

[2] Section 553 prohibits the unauthorized interception and broadcast of cable transmissions. Because the communications at issue were received via satellite feed, this provision is inapplicable. *See J & J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 351–52 (5th Cir. 2014).

insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### B. The Communications Act

The Communications Act prohibits the unauthorized interception and broadcast of satellite transmissions. 47 U.S.C. § 605. An owner of an establishment is directly liable for violating the Communications Act if Plaintiff shows (1) the Event was shown at the establishment, and (2) the exhibition was not authorized by Plaintiff. *See, e.g., J & J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at *1 (W.D. Tex. Mar. 19, 2014) (citing *KingVision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)). Additionally, individuals may be held vicariously liable for a corporation's violation of the Communications Act.

4

The parties dispute the proper standard for determining vicarious liability under the Communications Act. Plaintiff argues the proper standard is whether the individual defendant had (1) the right and ability to supervise the interception or broadcast of the communications and (2) an obvious and direct financial interest in the interception or broadcast of the communications. Mot. Summ. J. [#16] at 11. Salem and Najjar concede that courts "nationwide" have adopted the standard urged by Plaintiff "in determining individual liability for violations of § 605." Salem's Resp. [#20] at 9–10; *see also* Najjar's Resp. [#21] at 9–10. But they contend they may not be held liable for violations of § 605 done on Fifth Club's behalf unless Plaintiff offers evidence sufficient to pierce Fifth Club's corporate veil. *See* Salem Resp. [#20] at 8–10; Najjar Resp. [#21] at 8–10.

The Court concludes the vicarious liability standard offered by Plaintiff is more congruent with the text and purpose of the Communications Act. As to the statute's text, § 605(a) prohibits any person from "receiv[ing] or assist[ing] in receiving" unauthorized satellite communications and "us[ing] such communications (or any information therein contained) for his own benefit or for the benefit of another." 47 U.S.C. § 605(a). This language closely mirrors the standard for vicarious liability offered by Plaintiff, and it demonstrates that an individual who assists in a corporation's interception of communications and who benefits from the use of those communications violates § 605 even if those actions were taken on behalf of the corporation. As to the statute's purpose, the Communications Act was intended to "proscribe the piracy of programming signals." *United States v. Harrell*, 983 F.2d 36, 39 (5th Cir. 1993). This purpose would be undermined if the Court were to accept a standard of vicarious liability that shields individuals who engage in piracy as part of their corporate responsibilities. Instead, the goal of preventing the piracy of copyright communications—like the goal of preventing the exploitation of other copyright materials—is best achieved by ascribing liability to anyone who can supervise

5

the piracy and has a financial interest in exhibiting the pirated communications. *Cf. Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) ("When the right and ability to supervise [a copyright infringement] coalesce with an obvious and direct financial interest in the exploitation of copyright materials . . . the purpose of the copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation.") (cited by *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n.9 (2005)).

The Court therefore joins a number of district courts in this Circuit by adopting the vicarious liability standard offered by Plaintiff. *See, e.g., Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 753–54 (S.D. Tex. 2014); *see also Joe Hand Promotions, Inc. v. Adame*, No. EP-12-CV-141-KC, 2012 WL 3561367, at *4 (W.D. Tex. Aug. 16, 2012); *J & J Sports Prods.. Inc. v. Q Café, Inc.*, Civ. A. No. 3:10-CV-2006-L, 2012 WL 215282, at *4 (N.D. Tex. Jan. 23, 2012). Accordingly, an individual may be found vicariously liable for a corporation's violation of § 605 if the plaintiff shows the individual had (1) the right and ability to supervise the interception and broadcast of the communications and (2) an obvious and direct financial interest in the interception and broadcast of the communications.

Plaintiff contends that Fifth Club is directly liable and that Salem and Najjar are vicariously liable. Mot. Summ. J. [#16] at 10–11. The Court analyzes whether there is a genuine issue of material fact regarding Fifth Club's direct liability before analyzing whether there is a genuine issue of material fact regarding the Salem and Najjar's vicarious liability.

## A. Defendant Fifth Club

### 1. Liability

The pending motions for summary judgment dispute whether the Event was broadcast at Tejano Ranch and whether Fifth Club had Plaintiff's authorization to broadcast the Event. Plaintiff

contends the evidence conclusively demonstrates that the Event was broadcast at Tejano Ranch and that Fifth Club did not have Plaintiff's authorization to broadcast the event. Mot. Summ. J. [#16] at 10–11.

In support of its claim that the Event was broadcast at Tejano Ranch, Plaintiff offers both an affidavit signed by the auditor who witnessed the Event being broadcast at Tejano Ranch and a video showing the Event being broadcast. *Id.* [#16-1] Ex. A-2, Ex. F. In support of its claim that Fifth Club did not receive authorization, Plaintiff offers the affidavit of Thomas P. Riley, which states Defendants did not receive authorization from Plaintiff or pay Plaintiff a licensing fee. *Id.* Ex. A ¶¶ 8, 9. This evidence establishes a prima facie case that Fifth Club violated § 605. Thus, to survive summary judgment, Fifth Club must offer competent evidence that creates a genuine issue as to whether it broadcast the Event or received authorization from Fifth Club to do so. *See Matsushita*, 475 U.S. at 586.

Fifth Club fails to offer competent evidence to create a genuine dispute on either issue. As evidence that the Event was not broadcast, Fifth Club offers only its response to Plaintiff's requests for admissions wherein it denied having intercepted the Event. Fifth Club's Resp. [#18] at 10. Not only is this response unsupported by any evidence, it does not speak to whether the Event was broadcast at Tejano Ranch. Indeed, Fifth Club does not explicitly deny that the Event was broadcast or shown at Tejano Ranch. *See* Fifth Club's Resp. [#18-1] Ex. B at 2. Such unsubstantiated assertions are not competent summary judgment evidence, *Turner*, 476 F.3d at 343, and therefore Fifth Club has failed to create a genuine dispute as to whether the Event was broadcast at Tejano Ranch.

Fifth Club has also failed to create a genuine dispute regarding whether it received authorization from Plaintiff. Fifth Club contends summary judgment is inappropriate on this issue

for two reasons. First it contends, with only its responses to Plaintiff's requests for admissions as proof, that "Fifth Club has not admitted to intercepting the [Event], willfully transmitting the [Event], or otherwise broadcasting the [Event]." Fifth Club's Resp. [#18] at 10. But Fifth Club has never denied Plaintiff's allegations that it did not receive authorization from Plaintiff, pay Plaintiff a licensing fee, or enter into an agreement with Plaintiff to broadcast the Event. *See id.* [#18-1] Ex. B at 1–3. In the end, Fifth Club relies entirely on its refusal to admit liability. But merely refusing to admit liability does not create a genuine issue of material fact, and therefore it cannot defeat a motion for summary judgment.

Second, Fifth Club objects to Plaintiff's use of redacted discovery documents to support its motion for summary judgment. *Id.* [#18] at 10; *see also* Mot. Summ. J. [#16-1] Ex. C (blacking out all requests for admissions that were denied by Fifth Club). Fifth Club contends that "Plaintiff's blatant attempts to conceal specific responses . . . are such that a reasonable jury could return a verdict for the nonmovant." Fifth Club's Resp. [#18] at 10. But Plaintiff's decision to conceal Fifth Club's discovery responses is irrelevant to the issue of whether Fifth Club received authorization from Plaintiff to broadcast the Event. And even if the redacted discovery responses were relevant and created a credibility deficit so great a jury could reasonably find for Fifth Club, the Court is expressly prohibited from making credibility determinations at the summary judgment stage. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254–55. There is thus no genuine dispute that Fifth Club did not receive authorization from Plaintiff to broadcast the Event.

Because Fifth Club fails to create a genuine issue of material fact on whether the Event was broadcast at Tejano Ranch or on whether Fifth Club acquired Plaintiff's authorization to broadcast the Event, the Court concludes Plaintiff has shown Fifth Club violated § 605. Accordingly, the Court grants Plaintiff's motion for summary judgment as to Fifth Club.

8

### 2.  Statutory Damages

The Communications Act allows the aggrieved party to recover either its actual damages plus the violator's profits attributable to the violation, or statutory damages of at least $1,000 but not more than $10,000, as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff has elected to seek statutory damages and requests the maximum amount of $10,000. Mot. Summ. J. [#16] at 11, 14. The Court finds the maximum statutory damage amount to be a just award in this case. Fifth Club could have licensed the Event and legally shown the fight at Tejano Ranch but did not do so. Plaintiff's actual damages would be difficult if not impossible to prove. As a starting point, Plaintiff lost both potential customers and potential licensing revenue when the Event was illegally broadcast at Tejano Ranch. Pirate broadcasters also threaten the vitality of the entire pay-per-view industry, including Plaintiff, because at least some businesses will be unwilling to compete and will, like the pirates, refuse to pay the requisite licensing fees. In fact, Congress specifically amended the Communications Act by stiffening the penalties and expanding standing to sue to thwart this threat to the long-term viability of the pay-per-view industry. *Harrell*, 983 F.2d at 39–40 (citing 1988 U.S.C.C.A.N. 5577, 5657–58). Congress determined an award of $10,000 would prove sufficient to deter unauthorized broadcasts, and the Court finds $10,000 a just amount in this case.

### 3.  Willful Violation Damages

Plaintiff also seeks additional damages because the Communications Act permits a court to increase an award of damages by up to $100,000 for each violation "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The undisputed evidence indicates an unauthorized commercial establishment could receive a broadcast of the Event only through some wrongful action, "such as using an

unauthorized decoder or satellite access card, obtaining cable or satellite service and illegally altering the cable or satellite service to bring the signal of the Event into the establishment, or moving an authorized decoder or satellite card from its authorized location to the commercial establishment." Mot. Summ. J. [#16-1] Ex. A at 4. The Court again concludes such evidence demonstrates a willful violation of the Communications Act. *Accord Casita Guanajuato*, 2014 WL 1092177, at *2. Fifth Club's intent to benefit financially is also apparent from the record, as the undisputed evidence shows customers at Tejano Ranch were required to pay a $5 cover charge on the night of the Event. Mot. Summ. J. [#16] Ex. A-2; *see also J & J Sports Prods., Inc. v. Bandera Cowboy Bar LLC*, No. 5:15-CV-352-DAE, 2016 WL 2349123, at *5 (W.D. Tex. May 2, 2016) ("[C]harging a $5 cover charge on the night of the Event demonstrates a direct private financial gain."). Accordingly, the Court finds Fifth Club's violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

Having found the violation was committed willfully and for commercial advantage, the Court must now, in its discretion, determine an appropriate additional award of damages not to exceed $100,000. *Id.* Plaintiff argues five times the maximum statutory damages, or $50,000, would sufficiently deter Fifth Club and other unauthorized commercial establishments from pirating future Event broadcasts. Mot. Summ. J. [#16] at 18. The Court finds a total damages award of $60,000 to be excessive in this case. The commercial listing fee for the Event is based on seating in the establishment showing the Event; any establishment seating between 151 and 200 people would be charged $4,000. *Id.* [#16-1] Ex. A-3. An eyewitness to the broadcast estimated there were 180 patrons in Tejano Ranch at the time of the Event. *Id.* Ex. A-2. Therefore, Fifth Club would likely have paid $4,000 to license the broadcast. A total award of $60,000 would be fifteen

times the actual cost of the license. Instead, the Court finds an additional award of $10,000 to be sufficient to hold Fifth Club accountable and discourage other commercial establishments from committing similar violations. A total damages award of $20,000 is five times the legitimate licensing cost. Such an award should provide an adequate disincentive for would-be future violators and is in line with the decisions of district courts cited in Plaintiff's motion. *See J & J Sports Prods., Inc. v. Rivera*, No. H-13-902, 2014 WL 3533472, at *3 (S.D. Tex. July 14, 2014) ("Regarding additional damages for willful violations, the case law reviewed by this Court suggests that a multiplier of three to eight times to amount of statutory damages is appropriate.").

Accordingly, the Court determines Fifth Club is liable to Plaintiff for its unauthorized broadcast of the Event in the amount of $20,000.

### B. Defendants Salim Salem and Ghassan Najjar

Plaintiff also argues summary judgment should be granted against Salem and Najjar because the evidence conclusively demonstrates Salem and Najjar, as shareholders and directors of Fifth Club, had the right and ability to supervise Tejano Ranch's unauthorized broadcast of the Event and had an obvious and direct financial interest in the unauthorized broadcast. *See* Mot. Summ. J. [#16] at 11. In response, Salem and Najjar argue their refusal to admit the right and ability to control the interception of the Event broadcast and their denial of an obvious and direct financial interest in broadcasting the Event create a genuine issue of material fact sufficient to defeat summary judgment. Salem's Resp. [#20] at 10; Najjar's Resp. [#21] at 10.

The only evidence offered by Plaintiff to prove Salem and Najjar had the right and ability to supervise the interception of the Event comes from Salem and Najjar's Answers. Specifically, Plaintiff refers to Salem's—and, *mutatis mutandis*, Najjar's—admission that "he had a right to become involved with certain aspects of the supervision of the activities of the Establishment."

11

Salem's Answer [#7] ¶¶ 3, 4; Najjar's Answer [#6] ¶¶ 3, 4. In response, Salem and Najjar offer similarly scant evidence indicating they were not involved in ordering telecasts for Tejano Ranch or for other "day-to-day operations." Salem's Resp. [#20-1] Ex. B at 2, 9–11; Najjar's Resp. [#21-1] Ex. B at 2, 9–11. It is undisputed, however, that neither Salem nor Najjar were present at Tejano Ranch on the night of the Event. Salem's Resp. [#20-1] Ex. B at 3–4, 8–9, 11; Najjar's Resp. [#21-1] Ex. B at 3–4, 8–9, 11; *see also J & J Sports Prods., Inc. v. 291 Bar & Lounge*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (declining to hold individual shareholder liable where Plaintiff failed to allege the individual was present for the intercepted broadcast or that the individual authorized or controlled the interception). Given the paucity of the evidence on the scope of Salem and Najjar's involvement in Fifth Club's operations, the Court concludes there is a genuine issue as to whether Salem and Najjar had the right and ability to supervise the interception of the Event. Therefore, the Court denies Plaintiff's motion for summary judgment as to Salem and Najjar.

### C. Attorneys' Fees and Costs

Both parties have requested an award of attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii) requires the Court to "award[] reasonable attorneys' fees to an aggrieved party who prevails." An "aggrieved party" is a party with proprietary rights in the intercepted communication. *See id.* § 605(d)(6) (defining "any person aggrieved"). Although "prevailing party" is not defined in the statute, the Supreme Court has consistently held that a prevailing party is one who "has prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (per curiam) (cited in *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.*, 532 U.S. 598, 639 (2001)); *see also Hewitt v. Helms*, 482 U.S. 755, 760 (1987) ("Respect for ordinary language requires that a plaintiff receive at least some relief

12

on the merits of his claim before he can be said to prevail."). Thus, a party is eligible for an award of attorney's fees under § 605(e)(3)(B)(iii) if it has a propriety right in the intercepted communications and has prevailed on at least some of its claims.

Plaintiff is eligible for an award of attorney's fees. Because Plaintiff had the exclusive rights to exhibit and to sublicense the right to exhibit the Event, it had a proprietary right in the intercepted communications. *See, e.g.*, *Casita Guanajuato*, 2014 WL 1092177, at *1 (describing the rights to exhibit and to sublicense exhibition as proprietary). Because Plaintiff has been granted summary judgment against Fifth Club, it has prevailed on the merits of at least some of its claims. An award equal to one-third of the recovery—$6,660.00—is reasonable for cases such as this and is frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas, including this Court. *See id.* at *3. The Court declines to make a contingent award for post-judgment or appellate attorney's fees but will entertain such a request if it becomes necessary in the future. The Court also awards Plaintiff such other reasonable costs as it has incurred.

By contrast, none of the Defendants are eligible for an award of attorney's fees because they have not prevailed. *See* 47 U.S.C. § 605(e)(3)(B)(iii); *see also VJC Prods., Inc. v. Kydes*, 903 F. Supp. 42, 43 (S.D. Ga. 1995) (denying defendant's unopposed motions for attorneys' fees because § 605(e)(3)(B)(iii) contains "nothing that authorizes attorney fees for defendants"). The Court thus denies Defendants' requests for attorney's fees.

## Conclusion

The Court grants Plaintiff's motion for summary judgment as to Fifth Club because there is no genuine issue of material fact that an establishment owned by Fifth Club broadcast the Event without Plaintiff's authorization. The Court denies Plaintiff's motion for summary judgment as to Salem and Najjar because there is a genuine dispute regarding whether Salem and Najjar had the

right and ability to supervise Fifth Club's interception of the Event broadcast. Because Plaintiff is an aggrieved party that has prevailed, the Court awards Plaintiff its reasonable attorney's fees and costs. It denies Defendants' request for attorney's fees and costs.

Accordingly,

IT IS ORDERED that Plaintiff J&J Sports Productions, Inc.'s Motion for Summary Judgment [#16] is GRANTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FURTHER ORDERED that the Plaintiff is awarded statutory damages in the amount of $10,000.00 and an additional award of damages for a willful violation in the amount of $10,000.00. Plaintiff is thus awarded a total of TWENTY THOUSAND AND 00/100 DOLLARS ($20,000.00), plus post-judgment interest at the rate of 2.41 percent per annum calculated from the date of this order; and

IT IS FINALLY ORDERED that the Plaintiff is awarded reasonable attorney's fees in the amount of SIX THOUSAND SIX HUNDRED SIXTY AND 00/100 DOLLARS ($6,660.00) and its costs.

SIGNED this the _16th_ day of April 2019.

_Sam Sparks_
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE